**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

YOVANI CASTRO PASCUAL,

       Petitioner,

v.                                                                                    Civ. No. 26-1621 KG/GJF

GEORGE DEDOS, Warden, Torrance County
Detention Facility, in his official capacity;
MARY DE ANDA-YBARRA, Field Office
Director, U.S. Immigration and Customs Enforcement,
El Paso Field Office, in her official capacity;
TODD M. LYONS, Acting Director, U.S. Immigration
and Customs Enforcement, in his official capacity;
MARKWAYNE MULLIN, Secretary, U.S. Department of
Homeland Security, in his official capacity;
TODD BLANCHE, Acting Attorney General of the United
States, in his official capacity; and
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the following: (i) *Petition for Writ of Habeas Corpus and Request for Release from Detention* (Dkt. No. 2) ("Petition"); (ii) *Motion for Order to Show Cause* (Dkt. No. 3); (iii) *Emergency Motion to Shorten Briefing Schedule and Expedited Ruling* (Dkt. No. 7); and (iv) *Emergency Motion for Temporary Restraining Order* (Dkt. No. 8) (hereinafter "TRO Motion"), all filed by Petitioner Yovani Castro Pascual ("Petitioner"). Respondents Mary De Anda-Ybarra, Todd Lyons, Markwayne Mullin, Todd Blanche, and the Executive Office for Immigration Review ("EOIR") (collectively, the "Federal Respondents") responded to the Petition. Resp., Dkt. No. 11. George Dedos, Warden of the Torrance County Detention Facility where Petitioner is being held, has not responded, but the Federal Respondents

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 12).

assert that their arguments apply equally to him. *Id.* at 1 n.1.[2]  After Petitioner replied, the parties filed supplemental authority and submitted additional exhibits. *See* Reply, Dkt. No. 13; Am. Notice, Dkt. No. 16; Suppl. Authority, Dkt. Nos. 17, 18, 20, and 22. The Court held a hearing on the Petition and TRO Motion on July 6, 2026. Clerk's Minutes, Dkt. No. 21. This matter is ready for decision. Having reviewed the Petition, the motions, the briefs, the supplemental authority, the evidence, the law, and having considered the arguments of counsel at the hearing, the Court recommends that the Petition and motions be denied.

## I.    FACTUAL BACKGROUND

Petitioner Yovani Castro Pascual is a 37-year-old national of Mexico. Pet. ¶ 31, Dkt. No. 2. On May 4, 2019, he entered the United lawfully after inspection on a B-2 non-immigrant tourist visa that was valid for a period of 180 days. *See* Pet. ¶ 5, Dkt. No. 2; Resp't's Ex. A at 1-3. He failed to depart the United States by the 180-day deadline. *See* Resp't's Ex. A at 1-3, Dkt. No. 11. United States Citizenship and Immigration Services ("USCIS") notified Enforcement and Removal Operations ("ERO") Chicago of Petitioner's failure to depart. *See id.* at 2.

Petitioner lived in the United States continuously for over six years, found steady employment in the Chicago area, and married a United States citizen on November 14, 2025. Pet. ¶¶ 5, 31-32, Dkt. No. 2. He is stepfather to a 4-year-old girl and father to a United States citizen child with his wife, born during his detention. *Id.* ¶¶ 6, 32. He is the primary financial provider for the household. *Id.* ¶ 34.

Petitioner does not have any criminal convictions, but he has been arrested three times. Pet. ¶ 35, Dkt. No. 2. The arrests stem from a high-conflict relationship with the mother of his two older children. *Id.* Petitioner has a pending misdemeanor charge against him arising from a civil

---

[2] The Court will therefore refer to the Federal Respondents and Warden Dedos collectively as "Respondents."

order of protection dispute. *Id.* ¶ 11. He denies the charge and intends to contest it. *Id.* His wife sought an Order of Protection against Petitioner's prior partner. *Id.*

On November 7, 2025, a Form I-200 warrant was prepared authorizing Petitioner's arrest. *See* Resp't's Ex. B, Dkt. No. 11.[3] The probable cause determination that Petitioner was removable was based on "the execution of a charging document to initiate removal proceedings against the subject" and "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate … that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* The Notice to Appear, however, which charged Petitioner as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), was dated December 12, 2025. *See* Resp't's Ex. C, Dkt. No. 11 at 19 of 23.

On December 9, 2025, a misdemeanor charge was filed against Petitioner in Cook County, Illinois. Kaney Aff. ¶ 1, Dkt. No. 22. The charge alleged that Petitioner violated an agreed upon civil plenary order. *Id.* ¶ 2.

U.S. Immigration and Customs Enforcement ("ICE") served the warrant and arrested Petitioner on December 12, 2025, while he was on a public street. *See* Pet. ¶ 1, Dkt. No. 2; Resp't's Ex. A, Dkt. No. 11 at 16 of 23; Resp't's Ex. B, Dkt. No. 11 at 18 of 23. An immigration judge ("IJ") held a bond hearing on January 6, 2026. *See* Resp't's Ex. D, Dkt. No. 11 at 22 of 23. Petitioner was represented by counsel at the hearing with an interpreter present. *See* Resp't's Ex.

---

[3] In the Petition, Petitioner asserts that he was subject to a warrantless arrest and that ICE produced no I-213. Pet. ¶¶ 1-3, Dkt. No. 2. According to the Petition, counsel made repeated requests to the Department of Homeland Security ("DHS") and ERO for the Form I-213 and any arrest warrant, but DHS did not respond to the requests and had not uploaded any such documentation to the EOIR's electronic case management system. *Id.* ¶ 38. In their response, Respondents produced both the I-213 and the Form I-200 Warrant for Arrest of Alien. *See* Resp't's Ex. A & B, Dkt. No. 11 at 15-18 of 23. In reply, Petitioner acknowledges the warrant but nevertheless argues why it was invalid and why his arrest should be treated as warrantless under 8 U.S.C. § 1357(a)(2).

F, Dkt. No. 16 at 00:14-01:11.[4] Petitioner submitted over 200 pages of evidence in support of his release, including his passport, lawful B-2 entry documentation, his marriage certificate, his wife's birth certificate, a letter from his wife, his criminal history records demonstrating no convictions, the Order of Protection, and a letter from his employer. Pet. ¶ 42, Dkt. No. 2. The government did not present any evidence at the bond hearing: no police reports, witness statements, Form I-213, or individualized risk assessment. *Id.* ¶ 8; Resp't's Ex. F, Dkt. No. 16. Instead, Petitioner bore the burden to prove he was not dangerous. *See* Pet. ¶ 8, Dkt. No. 2; Resp't's Ex. F, Dkt. No. 16 at 1:00-1:04.

The IJ denied bond based on a finding of dangerousness, relying on Petitioner's three prior arrests. Pet. ¶¶ 7-8, Dkt. No. 2. The IJ noted the recency of certain charges: hitting a woman in the face causing her injury in May and then allegedly violating a protective order in September. *See* Resp't's Ex. F, Dkt. No. 16 at 1:54-2:40. The IJ considered Petitioner's counsel's arguments regarding his lack of dangerousness and lack of flight risk. *See id.* at 2:10-6:52. The IJ denied bond after finding that Petitioner could not meet his burden on dangerousness based on the recency and nature of the criminal conduct, even though the victim declined to pursue the charges. *See id.* at 7:06-10:17. The IJ noted that Petitioner could appeal the decision. *Id.* at 10:18-10:50.

While detained, Petitioner was unable to appear on the pending misdemeanor charge. Pet. ¶ 11, Dkt. No. 2. On January 16, 2026, a warrant was issued against him in criminal court for his failure to appear. *Id.* ¶¶ 11, 44; Kaney Aff. ¶ 3, Dkt. No. 22. Because of his detention, he has not been able to appear in criminal court to answer or defend against the charge. Pet. ¶ 12, Dkt. No. 2.

---

[4] Due to the parties submitting exhibits with the same exhibit letter, the Court re-lettered some of the exhibits at the hearing to avoid duplication. *See* Clerk's Minutes; *see infra* page 10. The Court herein will use the exhibit lettering it announced at the hearing but will use the electronic docket numbering where appropriate for ease of reference. For example, Respondents named the audio recording lodged as Dkt. No. 16 as Exhibit E, but at the hearing, the Court re-lettered it Exhibit F. Exhibit E referenced herein is the Declaration of David Garcia, Dkt. No. 18.

On February 9, 2026, Petitioner's spouse filed a Form I-130, Petition for Alien Relative. Pet. ¶ 9, Dkt. No. 2. Petitioner is eligible for a direct path to lawful permanent residence ("LPR") under adjustment of status as the spouse of a United States citizen. *Id.*

Petitioner's criminal defense counsel appeared in court on March 13, 2026, on a motion to quash Petitioner's active warrant. Kaney Aff. ¶ 5, Dkt. No. 22. The judge ruled he could not quash the active warrant and move the case forward without Petitioner being physically present in the courtroom, despite his availability over Zoom from the detention facility. *Id.* His defense counsel discussed with the prosecutor having the State send an in-person writ to ICE to present Petitioner in criminal court. *Id.* ¶ 7. After the prosecutor informed him that such writs had been entirely unsuccessful, an experience that matched his own understanding of failed writs to ICE detainees, he concluded he was unable to proceed with discovery or move forward with a defense until the warrant can be quashed. *Id.* ¶¶ 8-10.

On June 2, 2026, USCIS sent Petitioner a Request for Evidence needed to process his Form I-130. Pet'r's Ex. A, Dkt. No. 13-1. USCIS requested bona fide evidence of his marriage as well as certified copies of all criminal records and court dispositions. *Id.* The next day, USCIS issued another governing Request for Evidence, limiting the evidence sought to the bona fides of his marriage. Resp't's Ex. G, Dkt. No. 20 at 3-12 of 12. His answer is due August 26, 2026. *See id.*

Petitioner is detained at the Torrance County Detention Facility. Pet. ¶ 4, Dkt. No. 2.

## II.    PROCEDURAL HISTORY

### A. Petition

In his *Petition for Writ of Habeas Corpus and Request for Release from Detention Pursuant to 28 U.S.C. § 2241* (Dkt. No. 2), Petitioner brings five claims for relief.

5

Three claims arise from the Due Process Clause. In Count One, Petitioner alleges Respondents violated his due process rights when they provided a constitutionally deficient bond hearing. *Id.* ¶¶ 61-67. Petitioner alleges in Count Two that his due process rights were violated based on the structural impossibility of his release: his detention prevents him from resolving his outstanding warrant, which may be the basis of detention in a future bond hearing. *Id.* ¶¶ 68-73. In Count Three, he asserts a violation of the Due Process Clause and Administrative Procedure Act ("APA") because USCIS's biometrics policy forecloses his lawful immigration pathway. *Id.* ¶¶ 74-78. According to the Petition, due to a recent policy change, USCIS does not grant requests to collect biometrics from aliens in custody at correctional institutions, which will result in USCIS denying his application as abandoned. *Id.* ¶¶ 10, 48-49. Petitioner argues that his detention precludes him from attending his biometrics appointment, thereby preventing him from applying for LPR despite his eligibility. *Id.* ¶ 10.

In Count Four, Petitioner alleges that his arrest without a valid warrant violated 8 U.S.C. § 1357(a)(2) and the Fourth Amendment. *Id.* ¶¶ 79-87. He additionally asserts that the manner of his arrest violated a binding federal consent decree in *Castañon Nava v. DHS*, No. 18-cv-3757 (N.D. Ill.), for lack of a pre-arrest individualized assessment of whether he was removable or a risk of flight. Pet. ¶ 2, Dkt. No. 2.[5] Finally, in Count Five, Petitioner contends that Respondents violated

---

[5] *Castañon Nava v. DHS* arose from a large-scale ICE enforcement operation in the Chicago area in which ICE arrested 106 people without an arrest warrant after encountering them in the community ("collateral arrests"). *Castañon Nava v. DHS*, 806 F.Supp.3d 823, 837 (N.D. Ill. 2025). ICE agents used blank I-200 warrants for collateral arrests that a supervisor in the field would sign without conducting an individual flight risk analysis. *See id.* at 848. Some of the arrestees filed a class action lawsuit against ICE, DHS, and others to compel ICE to comply with its obligations under 8 U.S.C. § 1357(a)(2) when conducting warrantless arrests of noncitizens unlawfully present. *See id.* at 833-34. The case resulted in a settlement agreement. *Id.* at 834. That agreement required, among other things, (1) officers before making a warrantless arrest "to have probable cause that the individual is in the United States in violation of U.S. immigration law *and that* the individual is likely to escape before a warrant can be obtained for the arrest;" (2) when determining the likelihood of escape, ICE officers must consider the totality of the circumstances, including certain specified factors; and (3) ICE officers must document the facts and circumstances surrounding a warrantless arrest in the noncitizen's I-213 Form. *Id.* at 838.

6

the APA because the denial of bond was arbitrary, capricious, and contrary to substantial evidence. Pet. ¶¶ 88-90, Dkt. No. 2.

### B. Motions

Petitioner filed a *Motion for Order to Show Cause* (Dkt. No. 3) on May 20, 2026. Therein, he asks the Court to order Respondents to show cause within three days why the Petition should not be granted. Pet'r's Mot. to Show Cause 2, Dkt. No. 3. He additionally requests that Respondents be enjoined from transferring him outside the District of New Mexico, removing him while the Petition is pending, and taking any action that would cause his pending Form I-130 to be denied or abandoned as a result of his inability to attend a biometrics appointment. *Id.* at 3. On May 21, 2026, the presiding judge entered an *Order to Answer*, requiring Respondents to file an answer by June 4, 2026. Order, Dkt. No. 6. That Order therefore renders moot the three-day show cause request.

Petitioner appeared before immigration judge Ralph E. Girven for a hearing on May 22, 2026. Pet'r's Emergency Mot. 2, Dkt. No. 7. IJ Girven denied Petitioner's request for a continuance pending this Court's resolution of the Petition, noting that he will order Petitioner removed from the United States by June 11, 2026. *See id.* at 2-3. Petitioner then filed an *Emergency Motion to Shorten Briefing Schedule and Expedited Ruling* (Dkt. No. 7) and an *Emergency Motion for Temporary Restraining Order* (Dkt. No. 8). He requested an expedited briefing schedule on his Petition so that this Court could enter a ruling by June 10, 2026. Pet'r's Emergency Mot. 3-5, Dkt. No. 7. In his TRO Motion, Petitioner requests an order enjoining his removal from the United States while his Petition is pending; restraining the EOIR or an immigration judge from entering a final order of removal; and restraining Respondents from transferring Petitioner outside the District of New Mexico. Pet'r's TRO Mot. 2, 11, Dkt. No. 8.

Following briefing on the Petition and TRO Motion, the Court set the matter for a hearing on July 6, 2026. *See* Order, Dkt. No. 14. In the Order, the Court acknowledged Petitioner's emergency motion and his concern that the IJ may issue an order of removal. *Id.* 1 n.1. The Court explained, however, that Petitioner has a right to appeal any such order and a stay of removal is available during the pendency of any such appeal. *Id.* Accordingly, the Court found that it "will have sufficient time to consider whether any interim order forestalling Petitioner's removal is necessary and appropriate." *Id.* Petitioner's *Emergency Motion to Shorten Briefing Schedule and Expedited Ruling* (Dkt. No. 7) should thus be denied as moot.

### C. Hearing and exhibits

On June 8, 2026, Petitioner filed a *Consolidated Reply in Support of Petitioner's Writ of Habeas Corpus and Motion for Temporary Restraining Order* (Dkt. No. 13). He attached Exhibit A, a Request for Evidence dated June 2, 2026, sent by USCIS to Petitioner. *See* Pet'r's Ex. A, Dkt. No. 13-1. According to the June 2, 2026 request, USCIS needed additional evidence from Petitioner by August 25, 2026, to process his I-130 petition, to include evidence regarding the bona fides of his marriage and "originals or certified copies for Yovani Castro Pascual from 2019 to 2026 of all criminal records and court dispositions showing how each incident was resolved." *Id.* at 1-4.

Subsequently, Respondents filed a Supplemental Authority, attaching as Respondent's Exhibit A[6] the Declaration of David Garcia, an Immigration Services Officer II for the Field Operations Directorate at USCIS, who provided the information therein based on his personal knowledge, his review of USCIS records, and information provided to him by other USCIS employees. *See* Resp't's Suppl. Authority & Garcia Decl. ¶¶ 1, 3, Dkt. No. 18. According to the

---

[6] At the hearing, the Court re-lettered the Garcia Declaration as Exhibit E. *See infra* at 10.

Declaration, USCIS has discretion to require biometrics, has not found a biometric services appointment is necessary, and thus has not issued an appointment for biometrics to adjudicate Petitioner's I-130. Decl. ¶¶ 8-10, Dkt. No. 18. He thus attests that biometrics are not required to adjudicate Petitioner's I-130 petition. *See id.* ¶¶ 3, 10.

Petitioner filed a response objecting to the Court's consideration of the Declaration. *See* Pet'r's Resp, Dkt. No. 19. He argued that the Court should disregard the evidence as untimely, noting that he has not had an opportunity to examine David Garcia or test the assertions stated in the Declaration. *See id.* at 2. He further objected based on hearsay. *Id.*

The Court held a hearing on the Petition and TRO Motion on July 6, 2026, addressing exhibits first. Clerk's Minutes, Dkt. No. 21. With respect to Petitioner's Exhibit A, Respondents noted that USCIS issued another governing Request for Evidence dated June 3, 2026, which limits the evidence USCIS seeks to the topic of marriage. *See id.* at 1. Counsel for Petitioner replied that she did not attach the June 3, 2026 Request for Evidence because it was unclear if it superseded the June 2, 2026 Request for Evidence or was merely additive of it. *Id.* at 1-2. The Court directed Respondents to supplement the record to include the June 3, 2026 Request for Evidence as Respondent's Exhibit G, *id.* at 2, which Respondents did following the hearing, *see* Suppl. Authority, Dkt. No. 20. With the proviso of admitting the second Request for Evidence, Respondents had no objection to the admission of Petitioner's Exhibit A, so the Court admitted it.

The Court thereafter also admitted Respondents' Exhibits A (I-213), B (warrant), C (Notice to Appear), D (Order of Immigration Judge Tuckman denying custody redetermination), E (Garcia Declaration), and G (June 3, 2026 Request for Evidence). *See* Clerk's Minutes 2, Dkt. No. 21. The Court considered Petitioner's objection to the Garcia Declaration, overruled it, and admitted it as Respondents' Exhibit E. *Id.* Petitioner also objected to the Court's consideration of Respondents'

9

Exhibit F, an audio recording of the bond hearing. *Id.* According to Petitioner's counsel, she did not receive a copy of the recording. *Id.* After counsel for Respondents agreed to resend counsel the recording, the Court stated that, should counsel for Petitioner want to object to Exhibit F after reviewing it, she had until Wednesday, July 8, 2026, to file an objection. *Id.* The Court instructed that it would view the failure to file an objection as evidence that Petitioner no longer objects to its admission. *See id.* Petitioner did not file an objection. The Court thus has admitted Respondents' Exhibit F.

On July 9, 2026, Petitioner filed a Supplement with the Affidavit of Adam Kaney, Petitioner's criminal defense attorney, attached as "Exhibit A." *See* Pet'r's Suppl., Dkt. No. 22. To avoid confusion due to Petitioner having submitted two Exhibit As into evidence, the Court will admit the Affidavit of Adam Kaney into evidence as Petitioner's Exhibit B.

With that clarification of the record, and having reviewed all admitted exhibits, the Court will consider the merits of the parties' arguments. But first, an overview of immigration law on arrests, detention, and bond hearings will set the stage.

## III. OVERVIEW OF IMMIGRATION ARREST, DETENTION, AND BOND HEARING PROCEDURES

An immigration judge conducts proceedings to decide the inadmissibility or deportability of an alien. 8 U.S.C. § 1229a(a)(1). Aliens placed in removal proceedings may be charged with an applicable ground of inadmissibility under § 1182(a) or of deportability under § 1227(a). *Id.* § 1229a(a)(2). Proceedings under § 1229a, unless otherwise specified, "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3). In removal proceedings, a written charging document called a "notice to appear" must be given to the alien either personally or served through the mail. *See id.* § 1229(a)(1). The notice to appear includes,

10

among other things, the nature of the proceedings and legal authority for them, the alleged violation of law, and the charges. *Id.*

### A. Apprehension and detention

Section 1226(a) establishes the process of arresting and detaining noncitizens already in the United States. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). As the Supreme Court explained, "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1(b). ICE officers authorized to issue an arrest warrant may release an alien "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

Warrantless arrests by immigration officers are also authorized. *See* 8 U.S.C. § 1357(a)(2). An immigration officer has authority without a warrant

> to arrest any alien in the United States, *if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation <u>and is likely to escape before a warrant can be obtained for his arrest</u>,* but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

*Id.* (emphasis added).

11

In sum, an ICE officer makes the initial detention determination for noncitizens subject to detention under section 1226(a). *See* 8 C.F.R. § 1236.1(c)(8). If the officer opts for continued detention, the noncitizen can seek review of that decision at a bond hearing before an immigration judge. *Id.* § 1236.1(d)(1).

## B. Bond hearing process

As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Section 1236.1(d)(1) provides:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, … the immigration judge is authorized to exercise the authority in section 236 of the Act … to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released….

8 C.F.R. § 1236.1(d)(1).

Immigration judges have authority to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses" as well as to "issue subpoenas for the attendance of witnesses and presentation of evidence." 8 U.S.C. § 1229a(b)(1). Noncitizens have the "privilege of being represented, at no expense to the Government, by counsel of the alien's choosing." *Id.* § 1229a(b)(4)(A).

As for the burden of proof applied in bond hearings,

> Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden. See 8 U.S.C. § 1226(a). For many decades, the BIA interpreted that silence as creating a presumption in favor of liberty pending removal proceedings. See Matter of Patel, 15 I. & N. Dec. 666, 666 (B.I.A. 1976) ("An alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security or that he is a poor bail risk." (citations omitted)).

> In 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996). IIRIRA adopted what is now the current version of the mandatory detention requirements of section 1226(c). IIRIRA did not alter the discretionary regime of section 1226(a) except by increasing the minimum bond amount from $500 to $1,500.
>
> Nevertheless, following the enactment of IIRIRA, the Immigration and Naturalization Service (INS) adopted new regulations establishing a presumption of detention in the initial custody determination by the arresting officer. See 8 C.F.R. § 236.1(c)(2)-(8). Under those regulations, a noncitizen seeking release bears the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." Id. § 236.1(c)(8). Although that regulation applied only to the custody determination by the arresting officer, the BIA soon adopted that standard for section 1226(a) bond hearings before an IJ, reversing its prior rule. See Matter of Adeniji, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); Matter of Guerra, 24 I.& N. Dec. at 38.

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 26-27 (1st Cir. 2021).

Accordingly, a detained alien under 8 U.S.C. § 1226(a) of the INA who seeks release "must establish to the satisfaction of the Immigration Judge … that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *In re Guerra*, 24 I. & N. Dec. 37, 38 (B.I.A. 2006). The INA "does not limit the discretionary factors that may be considered by the Attorney General in determining whether to detain an alien pending a decision on asylum or removal." *Id.* at 39. A noncitizen may appeal the IJ's decision to detain to the BIA. *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)).

## IV.    ANALYSIS OF PETITION

### A.  Count One: Alleged Violation of Due Process Clause: Constitutionally Deficient Bond Hearing

Petitioner argues that his due process rights were violated when he was detained as a result of a constitutionally deficient bond hearing. Relying on *Mathews v. Eldridge*, 424 U.S. 319 (1976), he contends the bond hearing was constitutionally deficient in three ways: (1) Petitioner bore the burden of proof; (2) the evidentiary basis – arrests without convictions arising from domestic civil

disputes – is legally insufficient to support civil detention; and (3) the IJ failed to meaningfully consider the totality of relevant evidence. Pet. ¶ 66, Dkt. No. 2.[7]

For their part, Respondents assert that the Court lacks jurisdiction to consider the due process claim based on the jurisdictional bar of 8 U.S.C. § 1226(e). Second, they argue that Petitioner must exhaust his administrative remedies before the IJ and BIA. According to Respondents, Petitioner's claim that the bond hearing was deficient as to the evidence considered and its weight cannot be raised in habeas, but via an appeal to the BIA, then the supervising Court of Appeals. With respect to the merits, Respondents assert that Petitioner received a constitutionally adequate bond hearing.

As always, this Court must begin with the question of jurisdiction.

### 1. Court has jurisdiction to consider constitutionality of bond hearing standard but not sufficiency of evidence.

A court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)). Nevertheless, Respondents argue that Petitioner's challenge to his bond review is not subject to judicial review based on 8 U.S.C. § 1226(e).

Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

---

[7] At the hearing, and for the first time, Petitioner argued that his due process rights were violated because Respondents did not make an individualized danger and flight determination on ICE Form 286. *See* July 6, 2026 Liberty Recording, ABQ-Gila_20260706_122653, at 1:43:39-1:44:50. Counsel for Petitioner admitted to not flushing out this due process argument in the Petition. *Id.* The Court finds this assertion belatedly made and recommends denying it based on waiver.

8 U.S.C. § 1226(e). Section 1226(e) bars judicial review of the Attorney General's discretionary decision to detain or release a noncitizen on bond. *See Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. Mar. 7, 2012). The Court therefore lacks jurisdiction to review an immigration judge's bond determination. *See Garay-Mercado v. Castro*, Case No. 2:26-cv-01119-MIS-KK, 2026 WL 1948159, *3 (D.N.M. July 6, 2026).

As for Petitioner's challenges to the IJ's denial of bond based on a lack of evidence and failure to consider certain evidence, those challenges implicate the IJ's discretionary judgment about what evidence to consider and the weight to afford it. So, too, does Petitioner's argument that evidence of arrests alone, without convictions, cannot justify detention under the clear-and-convincing standard. *See* Pet. ¶ 59, Dkt. No. 2. Whether an arrest can establish dangerousness, while framed as a due process challenge, is a disagreement with the merits of the IJ's decision. Section 1226(e) bars these challenges. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212-13 (9th Cir. 2022) (rejecting petitioner's claims that IJ's denial of his requests for bond show that procedures resulted in erroneous deprivation of his liberty interest, because claim was merely a disagreement with merits of IJ's decision, which court lacks jurisdiction to review under 8 U.S.C. § 1226(e); that petitioner objects to outcome of proceedings does not demonstrate procedural due process violation); *Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018) ("Borbot's habeas petition seeks to compel a *second* bond hearing despite alleging no constitutional defect in the one he received. This comes close to asking this Court to directly review the IJ's bond decision, a task Congress has expressly forbidden us from undertaking.").

Petitioner's challenge to the constitutionality of the standard the IJ used, however, as required by BIA precedent, is *not* a challenge to the Attorney General's discretionary judgment. *Cf. Jennings*, 583 U.S. at 295 (holding that § 1226(e) does not preclude challenges to statutory

15

framework that permits alien's detention without bail or to challenges to extent of Government's detention authority); *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022) ("And while the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a) may very well be discretionary, a constitutional challenge to its categorical, across-the-board nature, as opposed to the application of § 1226 to specific cases, is beyond the scope of § 1226(e)."); *Hernandez-Lara*, 10 F.4th at 33-34 ("To the extent the government is arguing that section 1226(e) deprives the district court or this court of jurisdiction, that claim fails: Hernandez does not challenge the IJ's ultimate exercise of discretion, but rather 'the extent of the Government's detention authority under the 'statutory framework' as a whole.'") (quoting *Jennings*, 138 S.Ct. at 841); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Velasco Lopez raises a due process challenge not to his initial detention but to the procedures that resulted in his prolonged incarceration without a determination that he poses a heightened bail risk. Whether Velasco Lopez received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review.").

Accordingly, the Court recommends concluding that it lacks jurisdiction to consider the second and third grounds Petitioner asserts in Count One that implicate the immigration judge's discretionary judgment. The Court will thus limit its analysis of the merits of Count One to whether the burden of proof was unconstitutionally placed on Petitioner. Before turning to that discussion, the Court must reach one more prefatory argument raised by Respondents – exhaustion.

### 2. Petitioner does not need to exhaust his burden-of-proof due process claim.

The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a

16

petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must exhaust available administrative remedies before seeking habeas relief under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Exhaustion is favored when (1) the "action under review involves exercise of the agency's discretionary power," and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). An individual's interests weigh heavily against requiring exhaustion in three circumstances: (1) when the administrative remedy "may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is doubt that the agency is "empowered to grant effective relief"; and (3) when an administrative body is "shown to be biased" or has predetermined the issue before it. *Id.* at 146-48. Futility is also a narrow exception to the exhaustion requirement. *Garza*, 596 F.3d at 1203.

Respondents argue that Petitioner did not exhaust his readily available administrative remedies and needed to request them before the IJ and BIA. For his part, Petitioner contends that exhaustion is not required because delay will cause undue prejudice, exhaustion would be futile, and substantial constitutional questions are raised that the agency lacks competence to resolve.

Exhaustion generally does not apply to constitutional claims over which the BIA lacks jurisdiction, except in cases where the BIA could have corrected the procedural error. *Vicente–Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008) ("[W]e have not required exhaustion of constitutional challenges to the immigration laws, because the BIA has no jurisdiction to review such claims…. [T]he BIA lacks authority to resolve constitutional questions as a general matter

and, hence, that this exhaustion exception extends to constitutional issues per se…. The only caveat is that objections to procedural errors or defects that the BIA could have remedied must be exhausted even if the alien later attempts to frame them in terms of constitutional due process on judicial review.") (internal quotations and citations omitted); *Onyenobi v. Bondi*, No. 25-3414, 2026 WL 838907, at *2 (6th Cir. Mar. 26, 2026). The BIA may consider a due process challenge to the procedure by which an immigration judge resolved the case, but not a challenge to a statute or regulation. *Onyenobi*, 2026 WL 838907, at *2.

A challenge to the constitutionality of the burden of proof standard need not be exhausted, as the BIA lacks authority to decide the constitutional issue. *Cf. Gallego-Arroyave v. Holder*, 505 F. App'x 749, 752 (10th Cir. 2012) ("Although Mr. Gallego did not raise his constitutional claim to the BIA, 'exhaustion of constitutional challenges to the immigration laws [is not required] because the BIA has no jurisdiction to review such claims[.]'") (quoting *Vicente–Elias*, 532 F.3d at 1094); *Gonzalez*, 355 F.3d at 1017 ("Mr. Gonzalez's challenge is ultimately a constitutional one, and an exception to the exhaustion requirement has been carved out for constitutional challenges to Agency procedures because the BIA has no jurisdiction to adjudicate constitutional issues."); *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges)"). To the extent Petitioner challenges the evidence the IJ considered and its sufficiency, however, that is an issue that should be appealed to the BIA. Exhaustion thus provides an alternative reason for denying the Petition as to Petitioner's evidentiary claims.

### 3. Placing burden of proof on detainee to show lack of dangerousness and flight risk does not violate due process.

The Court turns, then, to the merits of the claim in Count One over which it has jurisdiction and for which exhaustion is not required. Petitioner argues that placing the burden proof on the

noncitizen violates the Due Process Clause. *See* Pet. ¶¶ 40, 56-57, Dkt. No. 2. The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.*

The core concept of due process is protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Due process comes in two varieties. Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the idea of ordered liberty. *Id.* at 847. Procedural due process, by contrast, requires notice and an opportunity to be heard appropriate to the nature of the case before depriving an individual of an interest in life, liberty, or property. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

To determine whether a certain procedure is constitutionally required, the Court applies the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

19

In support of his argument, Petitioner relies primarily on decisions from this district holding that the government must bear the burden of clear and convincing evidence at the bond hearing. *See*, *e.g.*, *Requejo Roman v. Castro*, 816 F.Supp.3d 1267, 1282-85 (D.N.M. Jan. 12, 2026). The *Requejo Roman* case is illustrative of the cited cases. Mr. Requejo Roman entered the United States in 2022, was later arrested and charged with removal, and was released on bond after an IJ determined he was neither a flight risk nor a danger. *Id.* at 1273. In 2025, he was re-arrested and detained under 8 U.S.C. § 1225(b). *Id.* Noting the statute's silence on the burden of proving eligibility for bond, the court explained that under normal circumstances, federal regulations and a BIA decision place the burden on the noncitizen. *Id.* at 1282. But the court determined this was not a normal circumstance: the petitioner had been unlawfully detained without due process in violation of his constitutional rights for nearly three months. *Id.* at 1282. Applying the *Mathews v. Eldridge* test, the court said the first factor weighed in favor of Petitioner as "the most elemental of liberty interests." *Id.* at 1283. According to the *Requejo Roman* court, where the noncitizen was initially released on bond, the second factor favored shifting the burden to the government to justify detention to reduce the risk of an erroneous ongoing deprivation of liberty. *Id.* Finally, after acknowledging the Government's interest in protecting the community and ensuring the petitioner's appearance at removal proceedings, the court reasoned the interest diminishes where an IJ initially determined the noncitizen was neither a flight risk nor a danger when he was released on bond the first time and the Government had not shown any change in circumstances. *Id.*

This Court is not convinced that *Requejo Roman* and cases like it from this district apply to the situation here. Unlike in *Requejo Roman*, Petitioner here overstayed his visa. The initial bond hearing he challenges was the first time in which an IJ weighed in on his dangerousness and flight risk under § 1226(a). At that initial bond hearing, he received an adverse finding based on

20

dangerousness. This situation is not one in which the government should have to show changed circumstances to overcome a prior decision by an IJ favorable to the detainee.

Turning then to other circuit decisions, the circuits have reached varying results as to whether the Due Process Clause compels the government to bear the burden of proof at an immigration bond hearing, depending in part on when that hearing occurs in the process. *Compare Hernandez-Lara*, 10 F.4th at 27-41 (1st Cir.) (concluding that government must bear burden at immigration bond hearing of proving dangerousness by clear and convincing evidence and flight risk by a preponderance of evidence to continue detaining a noncitizen under § 1226(a)); *Velasco Lopez,* 978 F.3d at 846, 855-57 (2d Cir.) (holding that alien subject to prolonged 15-month detention under § 1226(a) should receive another bond hearing in which government bears burden by clear and convincing evidence to justify detention); *with Rodriguez Diaz*, 53 F.4th at 1203 (9th Cir.) (holding that Due Process Clause does not entitle petitioner to second bond hearing at which government bears burden of proof by clear and convincing evidence); *Miranda*, 34 F.4th at 346 (4th Cir.) ("the detention procedures adopted for § 1226(a) bond hearings provide sufficient process to satisfy constitutional requirements").

The Court finds the reasoning of the Fourth and Ninth Circuits more persuasive in this context. The Fourth Circuit expressly disagreed with the First Circuit: "the *Hernandez-Lara* court disregards more than a century of case law providing that aliens are not subject to the same due-process protections as ordinary citizens." *Miranda*, 34 F.4th at 366. It considered relevant to the first factor the "Supreme Court precedent establishing that aliens are due less process when facing removal hearings than an ordinary citizen would have" and that detention under § 1226(a) is of much shorter duration – pending removal – than the indefinite and potentially permanent detention in *Zadvydas*. *See id.* at 360-61. As for the second factor, the Fourth Circuit reasoned that aliens

21

receive the fundamental features of due process with notice and an opportunity to be heard before an immigration officer, immigration judge, and the BIA. *Id.* at 362. Turning to the third factor, the government has a "significant interest in detaining aliens pending their removal hearings" given the vital public interest in immigration enforcement. *Id.* at 364-65. Consequently, the Fourth Circuit held that "Supreme Court precedent establishes that the current procedures used for detention under § 1226(a) satisfy due process." *Id.* at 366.

Following similar reasoning, the Ninth Circuit in *Rodriguez Diaz* rejected a petitioner's claim that, because his detention was unconstitutionally prolonged, due process entitled him to receive a new bond hearing with the government bearing the burden of proof. 53 F.4th at 1193-95. There, the petitioner was detained for approximately a year and a half after the IJ found he posed a danger based on his criminal history. *See id.* The Ninth Circuit held that the Due Process Clause does not entitle the petitioner to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence. *Id.* at 1203. Its explanation for why existing agency procedures sufficiently protect the non-citizen's liberty interest and mitigate against the risk of erroneous deprivation bears repeating:

> Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8). This involved evaluating Rodriguez Diaz's likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons." *Id.* Rodriguez Diaz was then able to request a second custody determination before an IJ. *Id.* §§ 236.1(d)(1), 1003.19(b). Within two months, Rodriguez Diaz received that bond hearing, at which he was represented by counsel and could present evidence that might bear on the IJ's determination. After the IJ denied bond on account of Rodriguez Diaz's gang affiliation, Rodriguez Diaz had the right to appeal to the BIA. *See id.* § 236.1(d)(3).
>
> Although the IJ's discretionary bond determination was not reviewable in federal court, *see* 8 U.S.C. § 1226(e), we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in Rodriguez Diaz's agency proceedings, including any claimed due process violation. *See Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022) (holding that federal courts have habeas jurisdiction over

"questions of law or constitutional questions" but not "an immigration court's determination that a noncitizen is a danger to the community)….

Moreover, as we noted above, throughout the course of his detention, Rodriguez Diaz has had the right to seek an additional bond hearing if his circumstances materially change. *See* 8 C.F.R. § 1003.19(e).

*Id.* at 1209. These agency procedures, with numerous levels of review and the opportunity to be heard by a neutral decisionmaker, mean the risk of erroneous deprivation is relatively small. *Id.* at 1210.

The petitioner also argued that he should not have borne the burden of proof at his initial bond hearing. *Id.* at 1210. The Ninth Circuit disagreed, reasoning that non-immigration cases are an imperfect fit for determining the proper procedures, particularly where § 1226(a) procedures are available to the alien from the beginning of his detention. *See id.* at 1211. It pointed out that the Supreme Court has repeatedly been clear that the Constitution permits rules for alien detainees that would be unacceptable for citizens. *Id.* (quoting *Demore v. Kim*, 538 U.S. 510, 521 (2003)). No Supreme Court case places the burden on the government to justify the continued detention of an alien, much less with a heightened "clear and convincing" showing. *Id.* Nor was the Ninth Circuit persuaded that the government generally will have access to more evidence than a noncitizen on issues of dangerousness or flight risk. *Id.* at 1212. Consequently, it concluded: "Nothing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error, much less that such burden-shifting would be constitutionally necessary in all, most, or many cases." *Id.*

This Court likewise concludes that Petitioner's argument under *Mathews v. Eldridge* fails, despite that the first factor favors Petitioner. Noncitizens have a significant liberty interest in being free from unwarranted detention, especially a detention that becomes "prolonged." *See Rodriguez Diaz*, 53 F.4th at 1207. Respondents do not dispute that Petitioner has a high liberty interest in

23

being free. *See* July 6, 2026 Liberty Recording, ABQ-Brazos_20260706_144533, at 2:58:12-2:58:27.

With respect to the second factor, Petitioner argues the risk of erroneous deprivation is "extremely high" because the entire burden is on the detainee and the government need not present any evidence. Pet. ¶ 64, Dkt. No. 2. He focuses on the IJ's denial of bond based on his arrests and without evidence of convictions, police reports, witness statements, a Form I-213, a warrant, or individualized risk assessment. *Id.* On the other hand, the record establishes that Petitioner had an opportunity to be heard before a neutral arbiter, he was represented by counsel in his initial bond hearing, and he presented over 200 pages of evidence in support of his release. *Id.* ¶ 42. *See also* Resp't's Hr'g Ex. F. At the bond hearing, counsel for Petitioner presented arguments regarding his criminal history and was given a rebuttal argument. *See* Resp't's Hr'g Ex. F. This record undermines Petitioner's assertion that the burden must rest with the Government to ensure a developed record before the IJ.

Moreover, "aliens should know as much or more than the government about their own criminal history," "they should know more than the government about any mitigating evidence related to that history", and they should "know more than the government about family or employment information, which could bear on their risk of flight and any danger they pose to the community." *Miranda*, 34 F.4th at 362 (rejecting argument that detention proceedings are tipped steeply in government's favor). As noted by the Fourth Circuit, current procedures provide notice and an opportunity to be heard at three separate opportunities – before an immigration officer, before an immigration judge, and on appeal to the BIA. *Id.* The second factor weighs in favor of Respondents.

24

Finally, with respect to the third factor, Petitioner asserts that the Government's interest is at its weakest where he is not a flight risk or danger to the community. He highlights his lack of criminal convictions and that he has lived here for six years with family, children, and work connections. Respondents' interest, however, is not weak. As the Ninth Circuit explained, the Government has a strong interest in preventing aliens from remaining in the United States unlawfully and control over immigration is a sovereign prerogative. *Rodriguez Diaz*, 53 F.4th at 1208. More specifically to detention during removal proceedings, the Government has an interest in protecting the public from dangerous aliens and increasing the likelihood of successful removal once an order of removal is obtained. *Id.* at 1208-09 (explaining that "Supreme Court has specifically recognized Congress's determination that the government has been unable to remove deportable criminal aliens because of its initial failure to detain them").

Balancing the factors, this Court does not believe that due process requires shifting the burden of proof to the Government at the initial bond hearing. In sum, Petitioner received considerable process – a robust bond hearing before a neutral immigration judge who reached the merits, finding Petitioner did not satisfy the standard to show he was not dangerous. He was entitled to appeal that decision to the BIA and to the Court of Appeals, both of which he eschewed. He also has the right to file another motion to reconsider bond if his circumstances change. The totality of process minimizes the chance of error and does not violate the Due Process Clause. For all the foregoing reasons, the Court recommends denying Count One.

### B. Count Two: Alleged Violation of the Due Process Clause: Structural Impossibility of Release (Warrant Cycle)

Next, Petitioner argues his detention violates due process because the government has "created a structural impossibility from which no administrative remedy can provide relief." Pet. ¶ 69, Dkt. No. 2. According to Petitioner, he cannot quash the state court warrant without being

released to attend the hearing, but that any "*future* bond hearing would treat the warrant as evidence of dangerousness." *Id.* ¶ 70 (emphasis added).

Respondents reply that the decision in their favor on the first count forecloses the need to review this count. Resp. 5-6, Dkt. No. 11. Because Petitioner received due process at the bond review hearing, they contend that further analysis of what evidence the IJ should consider is barred by § 1226(e). Finally, Respondents assert that Petitioner has a separate avenue to address his pending warrant through coordination with the governing authority via a writ.

"Habeas corpus review is available under § 2241 if one is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997). The fundamental purpose of a § 2241 habeas petition is for a person in custody to attack the legality of that custody, and the function of the writ is to secure release from illegal custody. *Id.* (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

Petitioner's current detention is based on the record before the IJ that preceded the issuance of the state court warrant. As mentioned, Petitioner received constitutionally adequate process in that hearing. Unless he requests another bond hearing and the state court warrant is used as separate justification for his continued detention, then his detention does not arise from the state court warrant. His argument that the warrant would be the basis to detain in a future bond hearing is speculative. Moreover, should another bond hearing be held and the IJ deny the bond in part on the warrant, then Petitioner must appeal that discretionary decision concerning the proper evidence the IJ may consider to the BIA and Court of Appeals. Petitioner has not established a due process violation compelling his release from detention where he was detained in accordance with constitutional procedures and he is not being unlawfully subjected to physical restraint, as is the necessary predicate for a habeas claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973)

(explaining that habeas remedy arises from petitioner's grievance that "he is being unlawfully subjected to physical restraint"). The Court thus recommends denying Count Two.

### C. Count Three: Alleged Violation of the Due Process Clause and Administrative Procedure Act: Biometrics Policy Forecloses Lawful Immigration Pathway

According to Petitioner, USCIS's December 5, 2025 Policy states that USCIS will not collect biometrics from detained individuals, will not reschedule biometrics appointments due to detention, and will deny the applications as abandoned for failure to attend. Pet. ¶ 76, Dkt. No. 2. Consequently, Petitioner argues that his Form I-130 faces a certain path: the biometrics appointment will be issued and missed, USCIS will not reschedule it, and USCIS will deny his I-130 as abandoned. *Id.* ¶ 77. He asserts that due process does not permit the government to detain a person in a manner that prevents him from completing a mandatory procedural step in his immigration application. *Id.* ¶ 78. Additionally, and alternatively, Petitioner argues that the USCIS policy violates its obligation to collect biometrics information as set forth in 8 C.F.R. § 1003.47(a), (d), in violation of the APA.

Respondents insist that habeas is not the proper vehicle for this claim. They assert that Petitioner is challenging his conditions of confinement, which must be brought under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See* Resp. 8, Dkt. No. 11. Factually, Respondents dispute the biometrics narrative set forth in the Petition.

The Court need not determine whether this claim is properly brought in habeas because it is not ripe. Based on the record before it, the Court finds that USCIS has determined that a biometric services appointment is not necessary, and no appointment notice for Petitioner for biometrics has issued. *See* Garcia Decl. ¶ 9, Dkt. No. 18. USCIS has affirmatively stated that biometrics are not required to adjudicate Petitioner's I-130 petition. *Id.* ¶ 10. Petitioner thus has not established that USCIS will require biometrics from him or that his detention will preclude

providing such information, even if requested in the future. His harm is entirely speculative at this stage, and his claim is not ripe. Consequently, Petitioner has not established a due process violation based on USCIS's biometrics policy. In addition, because Respondents will not require Petitioner to attend a biometrics appointment, the Court advises denying as unnecessary and moot Petitioner's request in his *Motion for Order to Show Cause* to enjoin Respondents from taking any action that would cause his pending Form I-130 to be denied or abandoned as a result of his inability to attend a biometrics appointment.

In his Reply, Petitioner alternatively contends, based on USCIS's Request for Evidence, that his detention prevents him from resolving the outstanding warrant, "and no certified disposition can issue while that matter remains open." Reply 6, Dkt. No. 13. Factually, however, this argument again fails. As Respondents' Exhibit G shows, in its most recent Request for Evidence, USCIS is only seeking additional evidence regarding his marriage bona fides. *See* Resp't's Ex. G, Dkt. No. 20 at 3-12. The Court is not convinced that Petitioner's detention will prevent him from presenting evidence of the bona fides of his marriage, particularly given that he is represented by counsel. Moreover, Petitioner has not shown that USCIS would rely on the outstanding warrant to deny the application on that basis. Should USCIS do so, Petitioner would be in a position then to challenge that decision. The Court recommends denying Count Three for failure to establish a due process violation.

### D. Count Four: Alleged Violation of 8 U.S.C. § 1357(a)(2) and the Fourth Amendment: Warrantless Arrest Without Individualized Justification

Petitioner argues that he was arrested on an invalid warrant issued without an individualized assessment of removability, flight risk, or likelihood of escape prior to his arrest, which violated 8 U.S.C. § 1357(a)(2), the *Castañon Nava* consent decree, and the Fourth Amendment. *See* Pet. ¶¶ 81-87, Dkt. No. 2; Reply 7-10, Dkt. No. 13. Petitioner further asserts that

the warrant is unlawful because it issued before the preparation of the Notice to Appear. Reply 8, Dkt. No. 8.

Turning first to the *Castañon Nava* argument, at the hearing, counsel for Petitioner acknowledged that Petitioner is not part of the *Castañon Nava* class, which is specific to noncitizens subject to a warrantless arrest, and Petitioner was arrested pursuant to a Form I-200. *See* July 6, 2026 Liberty Recording, *ABQ-Gila_20260706_122653*, 2:15:26-2:16:21. Petitioner is thus no longer asking the Court to find that Respondents violated the *Castañon Nava* consent decree. *Id.* at 2:16:22-2:17:08. Nevertheless, Petitioner is requesting that the Court find a similar defect in due process because immigration officers did not conduct an individual assessment of his dangerousness or flight risk before detaining him. *See id.*

While Respondents do not concede that Petitioner has demonstrated a violation of § 1357 or the Fourth Amendment, their primary response to Count Four is that habeas is not the appropriate vehicle for this claim and that release is not the proper form of relief. Resp. 9, Dkt. No. 11. They contend that 8 U.S.C. § 1252(b) bars the Court from exercising jurisdiction over this claim and that Petitioner must address his Fourth Amendment challenge via a motion to suppress filed with the BIA. Resp. 10, Dkt. No. 11.

Some district courts have ordered a petitioner's release based on an unlawful warrantless arrest. *See, e.g.*, *Chiliquinga Yumbillo v. Stamper*, 2:25-cv-00479-SDN, 2025 WL 2783642, at *5 (D. Maine Sept. 30, 2025) (order release on multiple grounds, including warrantless arrest, but without extensive discussion of authority to order release based on warrantless arrest alone); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (same). But others have questioned that approach. *See, e.g.*, *Trega v. Bondi*, 821 F.Supp.3d 84 (D. Maine 2026) ("[E]ven if Ms. Trega could demonstrate her courthouse arrest

violated the law, her remedy would not be in a petition for a writ of habeas corpus. Illegal arrest

cannot serve as a basis for habeas relief."). As the Eastern District of Virginia concluded, illegality

of a petitioner's arrest procedures does not warrant his release from custody. *See Silva v. Noem*,

1:26-cv-0072 (RDA/LRV), 2026 WL 560338, at \*3 (E.D. Va. Feb. 25, 2026). The *Silva* court's

analysis is persuasive:

> As the Supreme Court has recognized, "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." *Walker v. Wainwright*, 390 U.S. 335, 337 (1968). Thus, it has long been the rule that where a criminal defendant challenges his pretrial detention and is subsequently convicted, the habeas petition is mooted…. Similarly, in the immigration context, courts have held that habeas proceedings are moot where the basis for detention changes while the habeas case is underway…. Here, Petitioner is currently detained pursuant to a warrant…; thus, Petitioner cannot seek his immediate release based on the warrantless nature of his original arrest.
>
> In any event, courts have also recognized that, pursuant to 8 U.S.C. § 1357, Respondents may arrest an immigrant and subsequently seek a warrant…. As the Supreme Court has recognized, "if sufficient ground for [a petitioner's] detention by the government is shown, he is not [to] be discharged for defects in the original arrest or commitment." *Ekiu v. United States*, 142 U.S. 651, 662 (1892)…. The Supreme Court has further agreed that "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez Mendoza*, 468 U.S. 1032, 1040 (1984). That is, "an unlawful warrantless arrest isn't a get-out-of-jail free card if a lawful basis to detain someone is subsequently established." *Salazar v. Noem*, 2026 WL 458304, at \*4 (D. Neb. Feb. 18, 2026)[.]

*Id.*

Immigration officers arrested Petitioner on a warrant, but they did not prepare the Notice

to Appear until after his arrest. Even if that sequence rendered the warrant invalid in violation of

Section 1357 or the Fourth Amendment, his detention is not currently based on the warrant.[8]

Rather, Respondents initiated removal proceedings and an IJ held a § 1226(a) bond hearing. After

---

[8] At the hearing, Respondents admitted that, under a strict reading of the federal regulations, ICE should not have issued the arrest warrant before issuing the Notice to Appear. *See* July 6, 2026 Liberty Recording, ABQ-Brazos_20260706_144533, at 2:59:02-2:59:35.

considering the submitted evidence, the IJ concluded that Petitioner failed to show he was not a danger and ordered his detention. Under these circumstances, Petitioner is not entitled to release from custody based on an earlier violation of the Fourth Amendment. *Cf. Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) ("The petitioners were arrested before deportation proceedings had begun and, we assume for purposes of this appeal, illegally…. From the moment the petitioners were able to pursue [administrative remedies], their detention was no longer so lawless as to allow a judge to free them under the habeas corpus statute.").[9]

Accordingly, the Court recommends denying the relief requested in Count Four. *Cf. Arias*, 676 F.2d at 1143 ("It is of course possible that the detention might be legal although the arrest was not. In the criminal law, if there is probable cause to hold an accused he cannot gain his freedom by showing that the arrest was illegal, although he may be able to suppress at his trial evidence seized as an incident to his arrest."); *Min-Shey Hung v. United States*, 617 F.2d 201, 202 (10th Cir. 1980) ("[P]etitioner's initial custody was pursuant to an arrest by the immigration officers without a warrant. However, the nature of this custody changed … when the District Director … made the probable cause determination…. The deportation proceedings thus commenced must be allowed to proceed without the intervention of proceedings in the district court challenging the arrest.'"); *Chavez de Vasquez v. Baker*, Civil Case No.: SAG-25-03657, 2025 WL 3713773, at *2 (D. Md. Dec. 23, 2025) ("Here, with Petitioner's bond determination already made in immigration court and her removal proceedings underway, habeas review challenging her original arrest is not cognizable.").

---

[9] Petitioner appears to have conceded this point when his counsel at the hearing stated that Petitioner was not asking that he should be released based on a Fourth Amendment violation. *See* July 6, 2026 Liberty Recording, ABQ-Gila_20260706_122653, at 2:26:40-2:27:06.

### E.  Count Five: Alleged Violation of the Administrative Procedure Act:  Arbitrary and Capricious Detention and Bond Denial

Petitioner argues that the denial of bond was arbitrary and capricious because: (1) it was contrary to substantial evidence; (2) it failed to consider other evidence; and (3) it failed to consider reasonable alternatives to detention. Pet. ¶ 90, Dkt. No. 2. Respondents counter that the APA is only available when there is no other adequate remedy in court. They contend that habeas provides an adequate remedy for Petitioner's claims challenging the invalidity of his detention. Alternatively, if the Court reaches the APA claim, Respondents argue that § 1226(e) bars consideration of the IJ's discretionary decision, which is appropriately considered by an appeal to the BIA and then the Court of Appeals. In reply, Petitioner "does not disagree that habeas is an adequate—indeed the primary—vehicle here; that is why the Petition leads with constitutional habeas claims and pleads the APA only in the alternative." Reply 10, Dkt. No. 10.

Under the APA, a court may set aside agency action that "is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "relied on improper factors, disregarded an important aspect of the problem, offered an explanation that runs counter to the evidence, or when a reasonable explanation for the agency's decision cannot be discerned." *Doe v. Noem*, 152 F.4th 272, 287 (1st Cir. 2025). The APA, however, does not apply where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). As Section 1226(e) says, the Attorney General's "discretionary judgment" is not subject to review and a court may not set aside a decision "regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Here, the IJ's decision on a § 1226(a) bond review is discretionary. The grounds raised in the APA in Count Five challenge decisions as to what evidence to review and the weight to give it – discretionary decisions that Section 1226(e) divests this Court of

32

jurisdiction to consider. The Court therefore recommends denying Count Five for lack of jurisdiction to consider the APA claim.

## V.   ANALYSIS OF MOTION FOR TEMPORARY RESTRAINING ORDER

"The substantive requirements for a preliminary injunction and temporary restraining order are identical." *See Valley Community Preservation Comm'n v. Mineta*, 246 F.Supp.2d 1163, 1165-66 (D.N.M. 2002) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994))*, aff'd on different ground*s, 373 F.3d 1078 (10th Cir. 2004). "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Because this Court recommends denying the Petition on the merits, Petitioner's TRO Motion should be denied for failure to show a substantial likelihood of success on the merits. Finally, and for similar reasons, the Court should deny Petitioner's requests in his *Motion for Order to Show Cause* to enjoin Respondents from transferring him outside the District of New Mexico or removing him while the Petition is pending.

## VI.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that:

1. The *Petition for Writ of Habeas Corpus and Request for Release from Detention* (**Dkt. No. 2**) should be **DENIED**;

2. Petitioner's *Motion for Order to Show Cause* (**Dkt. No. 3**) should be **DENIED**;

3. Petitioner's *Emergency Motion to Shorten Briefing Schedule and Expedited Ruling* (**Dkt. No. 7**) should be **DENIED as moot**; and

4.  Petitioner's *Emergency Motion for Temporary Restraining Order* (**Dkt. No. 8**) should

be **DENIED**.

**SO RECOMMENDED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

34